UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

| | |
|---|---|
| Susan Hassan<br><br>Plaintiff,<br><br>V.<br><br>TransUnion LLC.,<br><br>Defendant. | Civil Action No.<br><br><br><br>JURY TRIAL DEMANDED |

## Complaint
## ~~INTRODUCTION~~

1. Plaintiff Susan S. Hassan ("Plaintiff"), appearing pro se, brings this action against Defendant TransUnion LLC ("TransUnion" or "Defendant") for damages arising from TransUnion's failure to adequately safeguard Plaintiff's highly sensitive personal information, including her Social Security number and date of birth, which were exposed in a massive data breach that occurred on or about July 28, 2025, and which affected approximately 4,461,511 individuals nationwide.

2. TransUnion is one of the three major nationwide consumer reporting agencies in the United States. It collects, maintains, and disseminates financial and personal data on over 260 million Americans. Consumers have no choice but to entrust their most sensitive personal information to TransUnion, as its data collection practices operate largely without consumer consent or control. In exchange for the enormous profits TransUnion derives from monetizing consumer data, it owes a duty to protect that data with the highest degree of care.

3. Despite this duty, TransUnion failed to implement adequate and reasonable cybersecurity

measures to protect Plaintiff's personal information. On or about July 28, 2025, unauthorized actors gained access to a third-party application used in TransUnion's U.S. consumer support operations, exploiting vulnerabilities in TransUnion's vendor management and data security practices. As a result, Plaintiff's Social Security number and date of birth permanent, immutable personal identifiers were exposed to unauthorized criminal actors.

4. TransUnion did not notify Plaintiff of the breach until on or about September 9, 2025, approximately six weeks after the breach occurred, leaving Plaintiff's personal information exposed and vulnerable to exploitation during the entire intervening period without her knowledge.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction), as Plaintiff is a citizen of the Commonwealth of Massachusetts, Defendant TransUnion LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Chicago, Illinois, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), to the extent this action is related to any pending class actions arising from the same data breach.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the harm suffered by Plaintiff, and pursuant to 28 U.S.C. § 1391(b)(3) because

Defendant is subject to personal jurisdiction in this district.

## PARTIES

8. Plaintiff Susan S. Hassan is a natural person and citizen of the Commonwealth of Massachusetts, residing at 50 College Avenue, Somerville, Massachusetts 02144. Plaintiff brings this action pro se.

9. Defendant TransUnion LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. TransUnion is one of the three major nationwide consumer reporting agencies in the United States. TransUnion conducts business throughout the United States, including in the Commonwealth of Massachusetts and within this judicial district.

## FACTUAL ALLEGATIONS

### A. TransUnion's Collection and Custody of Personal Information

10. TransUnion is in the business of collecting, compiling, maintaining, and selling the personal and financial information of hundreds of millions of American consumers. TransUnion's business model depends on the collection of vast quantities of highly sensitive consumer data, including Social Security numbers, dates of birth, addresses, financial account information, and credit histories.

11. TransUnion derives substantial revenue from the collection, use, and sale of consumer information. Consumers like Plaintiff are not TransUnion's customers they are the product. TransUnion profits by monetizing the very personal information it is obligated to protect.

12. Consumers have virtually no ability to prevent TransUnion from collecting and maintaining their personal information. TransUnion's data collection operates without meaningful consumer consent. Because of this involuntary relationship, TransUnion owes a heightened duty to safeguard the information it collects.

**B. The July 2025 Data Breach**

13. On or about July 28, 2025, unauthorized criminal actors gained access to a third-party application used in TransUnion's U.S. consumer support operations. The breach was discovered approximately two days later, on or about July 30, 2025.

14. According to TransUnion's own breach notification filed with the Maine and Texas Attorneys General, the breach affected approximately 4,461,511 individuals in the United States. The compromised information included consumers' names, Social Security numbers, and dates of birth.

15. The breach has been linked to a broader pattern of cyberattacks targeting third-party Salesforce-connected applications. The threat actors, reportedly associated with the ShinyHunters hacking group, exploited OAuth token vulnerabilities and social engineering techniques to gain access to TransUnion's consumer support systems through a compromised third-party vendor application.

16. TransUnion has acknowledged that the breach involved "unauthorized access to some of [Plaintiff's] personal data" and that, in Plaintiff's case, the compromised information included her Social Security number and date of birth.

17. Despite the severity of the breach, TransUnion did not notify Plaintiff until on or about

September 9, 2025, more than six weeks after the breach occurred and more than five weeks after TransUnion discovered it. During this period, Plaintiff was unaware that her Social Security number and date of birth had been exposed to criminal actors and was unable to take any protective measures.

## C. TransUnion's Inadequate Data Security

18. TransUnion failed to implement adequate and reasonable security measures to protect Plaintiff's personal information. TransUnion's failures include, but are not limited to: (a) failing to adequately vet and monitor the security practices of its third-party vendors; (b) failing to implement adequate access controls for third-party applications connected to systems containing consumer personal information; (c) failing to encrypt consumer personal information at rest and in transit; (d) failing to implement adequate monitoring and intrusion detection systems capable of promptly detecting unauthorized access; (e) failing to implement adequate OAuth token management and access governance for third-party integrations; and (f) failing to follow industry-standard cybersecurity frameworks and best practices for the protection of highly sensitive consumer data.

19. TransUnion knew or should have known that its systems and third-party vendor integrations were vulnerable to cyberattack. Credit reporting agencies have been repeated targets of major data breaches, including the catastrophic 2017 Equifax breach that exposed the personal information of approximately 147 million Americans and resulted in over $700 million in settlements and fines. TransUnion itself suffered a prior data breach in 2022. Despite this knowledge, TransUnion failed to implement adequate security measures to prevent the July 2025 breach.

20. As one of the largest repositories of sensitive consumer financial and personal data in the United States, TransUnion had a heightened obligation to maintain best-in-class cybersecurity protections. The Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801 et seq., and its implementing regulations, including the FTC's Safeguards Rule, 16 C.F.R. Part 314, require financial institutions like TransUnion to develop, implement, and maintain a comprehensive information security program. TransUnion's failure to prevent the breach demonstrates that its security program was deficient.

**D. Plaintiff's Injuries**

21. On or about September 9, 2025, Plaintiff received a "Notice of Data Incident" letter from TransUnion, sent via TransUnion Event c/o Cyberscout, PO Box 1286, Dearborn, MI 48120-9998. The letter informed Plaintiff that unauthorized actors had gained access to some of her personal data, specifically including her Social Security number and date of birth.

22. As a direct and proximate result of the data breach and TransUnion's failure to safeguard her personal information, Plaintiff has suffered and continues to suffer the following injuries: (a) a substantially increased and imminent risk of identity theft and fraud, which constitutes a concrete injury given that her Social Security number and date of birth permanent, immutable identifiers — are now in the hands of criminal actors; (b) lost time spent reviewing the breach notification, researching the extent of the breach, monitoring financial accounts and credit reports for signs of fraud, and taking other protective measures time that would otherwise have been devoted to productive use; (c) anxiety, emotional distress, and loss of peace of mind arising from the knowledge that her most sensitive personal identifiers are permanently compromised; (d) the diminished value of her personal information, which can no longer be considered secure; and (e)

the loss of the benefit of the bargain, as TransUnion collected, maintained, and profited from Plaintiff's personal data without providing the data security it impliedly promised.

23. Plaintiff's injuries are concrete and sufficient to confer Article III standing. The First Circuit has held that lost time spent taking protective measures that would otherwise have been put to productive use constitutes a sufficient concrete, present harm caused by a plaintiff's exposure to the risk of future harm. See *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 376-77 (1st Cir. 2023). Here, Plaintiff has spent and continues to spend significant time monitoring her financial accounts and credit reports, reviewing statements for signs of fraudulent activity, and taking other protective measures all as a direct result of TransUnion's data breach.

24. Moreover, the factors identified by the Second Circuit in *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295, 302 (2d Cir. 2021), for assessing whether a data breach creates sufficient risk of future harm to establish standing, are all satisfied here: (a) Plaintiff's data was exposed as the result of a targeted cyberattack by sophisticated criminal actors (the ShinyHunters hacking group), not an accidental disclosure; (b) upon information and belief, portions of the stolen data from this breach have already been misused or offered for sale on dark web marketplaces; and (c) the type of data exposed Social Security numbers and dates of birth is among the most sensitive personal information in existence and creates a heightened risk of identity theft and fraud.

## CAUSES OF ACTION

### COUNT I Negligence

25. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

26. TransUnion owed a duty of care to Plaintiff to implement and maintain reasonable security measures to protect her personal information from unauthorized access, use, and disclosure. This duty arises from: (a) the special relationship between TransUnion and consumers whose data it collects and maintains; (b) TransUnion's statutory obligations under the GLBA and the FTC Safeguards Rule; (c) TransUnion's voluntary assumption of the duty to protect consumer data by collecting and maintaining it; and (d) the foreseeability that inadequate security measures would result in unauthorized access to consumer personal information.

27. TransUnion breached its duty of care by failing to implement adequate and reasonable security measures to protect Plaintiff's personal information, including but not limited to the specific failures described in Paragraph 18 above.

28. TransUnion's breach of its duty of care was the direct and proximate cause of Plaintiff's injuries as described herein.

29. As a direct and proximate result of TransUnion's negligence, Plaintiff has suffered and continues to suffer damages, including but not limited to those described in Paragraph 22 above.

### COUNT II Negligence Per Se

30. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

31. The Gramm-Leach-Bliley Act, 15 U.S.C. § 6801(b), requires financial institutions to

establish appropriate standards for the security and confidentiality of customer information. The FTC's Safeguards Rule, 16 C.F.R. Part 314, implements this requirement by mandating that financial institutions develop, implement, and maintain a comprehensive information security program containing administrative, technical, and physical safeguards.

32. TransUnion is a "financial institution" within the meaning of the GLBA and is subject to the FTC Safeguards Rule.

33. TransUnion violated the GLBA and the FTC Safeguards Rule by failing to implement and maintain adequate safeguards for consumer personal information, as evidenced by the July 2025 data breach.

34. The GLBA and the FTC Safeguards Rule were enacted for the specific purpose of protecting consumers like Plaintiff from the harm caused by unauthorized access to their personal financial information.

35. TransUnion's violation of these statutes and regulations constitutes negligence per se.

36. As a direct and proximate result of TransUnion's negligence per se, Plaintiff has suffered and continues to suffer damages as described herein.

**COUNT III Unjust Enrichment**

37. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

38. TransUnion collected, compiled, maintained, and profited from Plaintiff's personal information, including her Social Security number and date of birth. TransUnion derived substantial revenue from the collection, use, and sale of consumer data, including Plaintiff's data.

39. Plaintiff conferred a benefit on TransUnion by providing involuntarily her personal information, which TransUnion used and continues to use for commercial purposes.

40. TransUnion retained this benefit under circumstances that make it inequitable for TransUnion to retain the benefit without compensating Plaintiff, because TransUnion failed to adequately protect the very data from which it derives its profits.

41. TransUnion's retention of the profits derived from Plaintiff's personal information, without providing adequate data security in return, is unjust and inequitable.

42. Plaintiff is entitled to restitution and disgorgement of the profits TransUnion derived from its collection, maintenance, and use of Plaintiff's personal information.

**COUNT IV Breach of Implied Contract**

43. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

44. An implied contract existed between Plaintiff and TransUnion. By collecting and maintaining Plaintiff's personal information, TransUnion implicitly agreed to safeguard that information with reasonable security measures. In exchange, Plaintiff's personal information provided TransUnion with the data necessary to operate its business and generate revenue.

45. TransUnion breached the implied contract by failing to implement and maintain reasonable security measures to protect Plaintiff's personal information, resulting in the unauthorized access and exposure of her Social Security number and date of birth.

46. As a direct and proximate result of TransUnion's breach of implied contract, Plaintiff has suffered and continues to suffer damages as described herein.

**COUNT V Invasion of Privacy / Intrusion Upon Seclusion**

47. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

48. Plaintiff had a reasonable expectation of privacy in her personal information, including her Social Security number and date of birth.

49. TransUnion's failure to implement adequate security measures, which directly enabled unauthorized criminal actors to access Plaintiff's personal information, constituted an intrusion upon Plaintiff's seclusion and private affairs that would be highly offensive to a reasonable person.

50. As a direct and proximate result of TransUnion's conduct, Plaintiff has suffered and continues to suffer damages as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Susan S. Hassan, appearing pro se, respectfully requests that this Court enter judgment in her favor and against Defendant TransUnion LLC, and award the following relief:

A. Compensatory damages in an amount to be determined at trial, including damages for lost time, emotional distress, anxiety, diminished value of personal information, and all other actual damages suffered

B. Punitive damages in an amount sufficient to punish TransUnion for its reckless and willful

disregard for the security of Plaintiff's personal information and to deter similar conduct in the future

C. Restitution and disgorgement of profits TransUnion derived from its collection, maintenance, and use of Plaintiff's personal information

D. Injunctive relief ordering TransUnion to: (i) implement and maintain enhanced cybersecurity measures sufficient to protect consumer personal information; (ii) engage independent third-party security auditors to assess and improve its data security practices; (iii) implement comprehensive vendor security management programs; and (iv) provide Plaintiff with not less than ten (10) years of credit monitoring and identity theft protection services at no cost

E. Pre-judgment and post-judgment interest as allowed by law

F. Costs of the action

G. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

Susan S. Hassan, Pro Se

50R College Avenue, Apt. 1

Somerville, MA 02144

Phone: (518) 466-7819

Email: sue55hass@gmail.com

Dated: February 19, 2026